Your Honor, the final case on the docket this morning is 2-24-0354. Brian Young, plaintiff's appellant, v. Brian Berman, defendant's appellee. Arguing on behalf of the appellant, Mr. Kevin F. Berry. Arguing on behalf of the appellee, Mr. Joseph W. Smith. Thank you. Mr. Berry, you may proceed. Good morning. May it please the court and counsel.  We're here on the appeal of a dismissal of a complaint for defamation and tortious interference with prospective economic advantage. The briefs, I think, do a fairly good job of covering what the key issues in the case are, but let me just emphasize a couple of points. What really is at the heart of this issue is the publication of two dossiers that were sent to Mr. Young's employer. And I want to point out that Mr. Young was a trustee at Lakewood, Village of Lakewood, from June of 2019 until October of 20. The first dossier wasn't sent to his employer until March of 2021. So some half a year after he was no longer a trustee, the defendant thought it necessary to send anonymous dossiers to his employer, which contained the information that we claim was defamatory per se and also events that attempt to interfere with Mr. Young's employment relationship. It seems in the defendant's response brief that he spends a lot of time on the discord that was occurring at the Village of Lakewood, and there certainly was discord. We would point out, however, as we did in our reply brief, that two salient points in the defense brief. One is all of the e-mails provided were taken out of context in that there was a back and forth, and all you saw was the forth and not the back. And therefore, much of it is taken out of context. What do you mean taken out of context? Young, he used the plaintiff's own words. He did, but the plaintiff's own words were in the context of the dispute at the village was because the plaintiff had taken on an effort to figure out what the toxic environment was that was being asserted by the chief of police, and there was a split on the board. Some people thought that they wanted to take care of the chief administrative officer, and some wanted to get to the bottom of the toxic relationship. And so what you saw was e-mails from Mr. Young, but what you didn't see was the e-mails from those that were trying to protect the chief administrative officer that engendered that back and forth. You didn't see that part of it. More importantly. May I ask, does the fact that that isn't seen, does that undercut the defamation per se? No, because the dossiers, both dossiers. My next question would be, then why would it be relevant? I would suggest that the back and forth really isn't relevant because the defamatory statements in the dossiers were the accusations of criminal conduct, and that was part of what? What criminal conduct? There was a letter submitted by the board to the state's attorneys to investigate Mr. Young for a variety of criminal actions. They were seeking to get Mr. Young indicted, and we lay out all of the statutes involved in our brief. So that those are the defamatory statements that frankly are not even addressed in the defense brief. Those statements were made in order to accuse Mr. Young. They actually did in fact accuse Mr. Young of crimes. But in addition, they were forwarded to his employer anonymously with cover letters that said things like, is this how you want to be represented, or do you have a problem? Was there any evidence to show that the defendant was aware that Mr. Young was being considered for a promotion? Yes, there's assertions in the complaint that the defendant was aware. There's an allegation. There's an assertion. I'm talking about facts. What is the factual pleading that shows that? Well, the plaintiff had discussions with Mr. Berman about the promotion. It was a topic of discussion among trustees at the board, so there was actual knowledge. Where in the record is that? At the time we prepared the complaint, it was asserted on information. An assertion is one thing. Pleading facts. Illinois is a fact pleading state. I understand that, Your Honor. And the pleading was that he knew. There is a pleading that he knew. We're a fact pleading state. You have to plead facts, not conclusions. Let me ask you this. Do you have any case law suggesting that the doctrine of transferred intent applies to causes of action for tortious interference with a prospective economic advantage? I don't. But the argument we made was that the only mens rea requirement in tortious interference is the interference, not the effect. So I don't have a case that has a holding that says there's transference. My argument would be that we merely need to plead that the intention of the communication was to interfere, and we did. And we alleged interference and alleged damages resulting from the interference. My concern is whether you sufficiently alleged that knowledge of the expectancy. And that case says defendant, Eck v. Donnelly, that's that Yellow Pages case. Defendant must know of this expectancy. And that is also, Justice Burkett makes a good point, the Eck case talks about the fact that you have to plead specific facts from which the conclusions, appropriate factual conclusions, like he knew of the expectancy, could be based. And I don't see in the complaint, I mean, I saw paragraph, I think it's 106, information of belief. Defendant knew plaintiff had an expectation of a valid business relationship. That's it. So I guess my concern is not those other elements. It's this one. Well, it was plead on information of belief because we know what evidence, we know what the plaintiff knows, but we don't know what the defendant knows. I mean, we can't get in his head and know what he knows. But that doesn't change your pleading burden. I understand that. And we plead information and belief, and we have to live with that. Counsel? Yes. You were saying that the words that were being used by the defendant were the words of your client, correct? No. The words that the defendant used included assertions by the board, accusations of criminal conduct that was communicated to the state's attorneys. Those letters and the publication that reflected that letter that was published publicly were communicated to plaintiff's employer by the defendant. Was that defamation per se? We believe it fits as defamation per se because it's an accusation of a crime. And how did they accuse him of a crime if they asked the prosecutor to examine or investigate to see if there was a crime, as opposed to saying, he committed, you know, whatever, and we want you to prosecute him for it? Well, I think the fair reading of the letter is, we believe he committed these crimes, and we want you to investigate it. That's a fair reading of what the letter said. So you're telling this court that any time anybody communicates with a prosecutor that there should be an investigation, that that is defamatory and actionable? Or am I misconstruing the broad swath that you're creating? No, no. I mean, it's a fair comment, but no, that's not what we're suggesting. What I'm suggesting is, when you say, these crimes are committed, please investigate, that's defamatory. If you say, we think there's things going on here, we think you should investigate, that's not defamatory. Is that actually the words in the letter that the defendant committed these crimes, please investigate? Is that the language? I don't have – to be honest, I don't have the letter right here in front of me. It's in the record. I believe it does say that we think you should investigate the defendant, the plaintiff in this case, for potential offenses. I don't believe the word potential is in it. I think it says for X, Y, and Z. Let me ask you this. Why argue defamation per se when the damages here, which is the loss of Young's promotion, seem to be easily calculable? Why do you need to argue defamation? I don't need defamation per se. I think I have defamation per quad anyway. But – and I also frankly think, well, I don't need it. How would the defendant's characterization of your client as a bully achieve a lack of visibility in his profession? Well, I think the fair reading of the letter together with the cover letter that says, is this how you want your company to be represented, the clear implication is that he's not worthy of being employed by you. I think that's a very fair reading of what the letter said. And that was the second dossier. The first dossier said you have a problem. But your client was not fired, correct? He was not fired, but he did lose a very lucrative promotion. He didn't get the promotion, but there's no facts showing that the defendant knew he was a mine for a promotion, correct? It's only information of belief is the allegation. What about the letter to the prosecutor? Why wouldn't that be privileged? Why wouldn't it, the letter, be privileged to the extent that it would be very little different than if there was a phone call to 911? And if the same phraseology was used, would that then be deemed to be defamation per quote? Every report to 911 is a cause of action in damages? Even if you were to conclude that that's not defamatory, the publication of that letter to his employer later is, in particular because it was made at a time when the state's attorneys declined to investigate. I understand your argument. You don't have to go further. Okay. It's not privileged to third parties. Exactly, Your Honor. And as it relates to those defenses, the fair report privilege that has been raised by the defendant I don't think applies. There's no question that the statements made did not occur during the course of an official proceeding. There was no official proceeding. It was a letter written by the board. It wasn't publicly acknowledged at the time it was written. And, therefore, there was no report. And in the Celaya case, which we cite, was a fairly extensive discussion of the need for an official proceeding in order to justify that defense. And it clearly didn't happen here. That's not an official act.  It's foyerable, isn't it? Yeah, the fair report privilege, first of all, it's really designed to protect news agencies from republishing. However, it has been applied to non-media. It has, but the point being that they're reporting on official proceedings that are a part, that are of public interest. And, actually, the Celaya opinion, there's a very long discussion of that specific issue because of cases where complaints filed arguably frivolously, it's sent to the paper to be published and then withdrawn in order to get the privilege attached to it by filing a judicial proceeding. That's the subsequent report. I guess I was trying to keep it separate. So, first, is the complaint to the state's attorney privileged or not? And then second. Second. I'm not going to lie. Okay. Really, I see it as a two-step analysis. You see it, I guess, as one. No, I take your point, yes. The original statement to the state's attorney's isn't, but including it in the dossier to the employer is not privileged under any circumstances. Is that because it's self-created? Or I forget the case. Yes. There are several reasons. One is it's self-created. Mr. Berman was part of the group at the date. Self-conferred. Excuse me. I think the case says self-conferred. Self-conferred, yes. If I can finish that one point. He was part of the cabal that created the letter in the first place and then republished it to his employer. So it was self-created. Thank you. Any other questions? No. Okay. Thank you. You'll have an opportunity to make a motion. Thank you. Thank you. Mr. Smith, you may proceed. Good morning, Your Honors. May it please the Court. Joseph Smith for the defendant appellee, Ryan Berman. The trial court was correct to dismiss the second amending complaint. First, it is not defamation to publish someone's own words. The plaintiff has never alleged that the content of the communications that were provided to his employer were incorrect or altered in any way. Second, the innocent construction rule. Are you saying that truth is defense? We have addressed that in the brief. As in, what was said about what was said was true. The content of the communications was true. It's never been alleged otherwise. They were his actual words. I took your statement that everything was true as implying that, therefore, it's not actionable. Am I missing something or not? I'm not sure. I follow the Court's question. Let me see if I can explain a little better. The content of the e-mails was true. That is not defamation to send those e-mails. There is also the issue of the State's Attorney letter, the cover letter of the dossiers. And that's because truth is a defense to defamation. Is that correct? Correct, yes. And the information contained in the State's Attorney's letter, the information contained in the cover letter of the dossier, the first dossier, as the plaintiff calls it, truth applies there. If you look at the language used in, not in the sense of a technical criminal offense, but in the everyday usage of the words that are contained in those documents. We discussed at length in the brief about what harassment means, examples of harassment in those e-mails and text messages. Do you want to comment on Mr. Berry's statement that there is some context here that makes it defamation? I take his argument as there is a lack of context included in those e-mails. Well, if context is necessary, does that support the argument that it's per se? Doesn't it make it per quote if there has to be an explanation? If there has to be an explanation about why the communication is defamatory, that would be defamation per quad, not per se. There is no claim in this case for defamation per quad. The plaintiff has explicitly defined his claims as defamation per se. In response to a prior complaint, we actually brought up the issue of defamation per quad. We argued there was no defamation per quad claim as well as defamation per se, and the plaintiff did not respond at all to the defamation per quad issues. So per quad has been abandoned at this point. Let me ask you this. At any point has the plaintiff been able to point to any specific sentences or lines in the package that your client sent that include a lie or a fabrication? Plaintiff sees us on three particular words, first, harassment, second, intimidation, and third, stalking. Those are the only three words that he provides any kind of explanation at all for why he believes they are false and defamatory. And as we go through the brief, those just don't hold any water. Harassment, again, the innocent construction rule is key here because harassment does not just mean committed an offense of harassment, and the offense of harassment that plaintiff suggests that Mr. Berman accused him of committing involves an obscene communication with an intent to offend. There is nothing like that in the complaint, nothing like that in any of the documents attached to the complaint. Intimidation, again, there is a widely recognized meaning for intimidation other than simply committing a crime. Intimidation can be any form of intimidation, synonymous with bullying. Stalking is the same way, and the stalking word only applies in a couple, only appears in a couple places. It's in an email that was sent from Brian Augustine to the rest of the village board where he mentions stalking, but there's nothing in the state's attorney letter or in the cover letter of dossier that says that Mr. Young committed the offense of stalking or anything like that. So those three words are not used as defamation per se. And each one of them would be subject to the innocent construction defense, correct? Absolutely, and I would like to comment on that. The way that the plaintiff argues innocent construction is completely backwards from the way that the Supreme Court says we have to apply it. Plaintiff says that if there is a construction of what's said that could be considered defamatory, then the jury must decide. But that's 180 degrees from the way the Supreme Court tells us we have to look at this. If it's capable of a reasonable innocent construction, then it's not defamatory per se. And the only exception to that is if the defamatory meaning was unmistakable, and there's nothing like that here. The Supreme Court specifically rejected plaintiff's proposed innocent construction analysis in Tuick v. Corbett, where the Supreme Court said that we aren't going to go with the reasonable construction rule that other states have. We're going to retain the innocent construction rule. And the Court recognized that this rule is favorable to the defendants, but that rule is justified because defamation per se relieves the plaintiff of the obligation of proving damages. So the plaintiff's argument on innocent construction rule is just wrong. Plaintiff suggests that the first place the Court should look to determine whether the communications are defamatory per se is the allegations of the complaint. That is also wrong. Plaintiff has continuously tried to distract the Court away from the content of his own communications. The plaintiff attached the dossiers to his complaint. A document attached to the complaint is as much a part of the complaint as the numbered paragraphs that were provided by the plaintiff. So not only that, if a document attached to the complaint contradicts an allegation in one of the numbered paragraphs, the document attached to the complaint controls not the allegation of the complaint. So the first place the Court should look to determine whether what was said was defamation per se is the dossiers themselves attached to the complaint, not what plaintiff alleges about the dossiers. We have the dossiers themselves. We have them to look at. I have just a few comments on tortious interference with a prospective economic advantage if there are no questions about defamation. Well, do you rely on fair report privilege? We do, yes. And we believe that And do you self-confer? No. Why not? In the, I believe it was the Kurzawa case, not the Celaya case, that involves the self-conferring of the privilege. Yeah. And in that case, the defendant had created a, the pleading, served the pleading or filed the pleading in the court and said, look at this pleading I filed in the court. This person did the only terrible things. Here, the speech at issue, the initial speech, is the village, the village board, not Mr. Berman. Counsel's argued that because the defendant was on the village board that he is, you know, authorship is attributable to him and therefore it is a self-conferral. Well, it is, it is a body. It's not just one person. I mean, I understand that. The counsel's saying that it's still attributable to your client. What do you say? My concern is more about the chilling effect on public officials, elected officials, who should be able to rely on the fair report privilege to talk about things that they've done in public meetings. I don't see it as conferring the privilege on yourself to do something in a public meeting and then tell people about it. That is, that is one of the things that elected officials do, is they provide information about what they've done in their public roles to the public. And I think creating an exception to the fair report privilege that applies only to public officials talking about what they've done would be very poor public policy. So it would be new. It would be new, pointing to peasant status. Because right now the state of the law, at least as I've understood it based on what I've learned so far, says that you can't self-confer. And that's in the restatement, isn't it? The restatement says that. The only context I've seen that you can't self-confer language applied is that Carzaba case, which involves the plaintiff filing a pleading and then broadcasting that pleading to the world. Here we're talking about a public official talking about what was done in a public meeting, which we want public officials talking about what they do in public meetings to the public. They need to be doing that kind of thing. And they need to be able to rely on the fair report privilege to protect them if someone says that's not true. I hope I answered the Court's question. So unless there are more questions on defamation, I have a few brief comments on tortious interference with the prospective economic advantage. That claim adds nothing to this case, as we've argued in the brief. If the defamation claim fails, then the tortious interference falls right along with it. So this is sort of a side issue. I agree with the Court's questions to Mr. Berry about the allegations of knowledge. There are no allegations of knowledge here other than conclusory allegations of knowledge. Mr. Berry says that the purpose was to get Mr. Young fired. Alternatively, he suggests in the transferred intent where the purpose to get him fired could be also applied to the purpose to interfere with the promotion. I don't see any case suggesting that transferred intent would be possible there. The knowledge of the prospective business advantage is an element of the claim, so I don't think they can rely on that. And not that it really matters that much, but I think the person who sent these dossiers' purpose was just to try to get Newmark to apply some pressure to Mr. Young to get him to not get off. Hey, Brian, this is your employer. We've seen all the things you're doing. You need to be concentrating on your work, not on messing with the public officials. To get to the dossier, what edits were made? What were the edits that were made by the defendant? The second dossier deletes some senders and recipients of the e-mails, but the content of the communications themselves were not altered in any way. So there were no edits other than just to who it was sent to? That is correct, yes. What about the doxing argument, the doxing claim? Was there any doxing in this case? That came up in the context of Mr. Young publishing a photo, a same photo of, I believe it was Trustee Ulrich's. Did the photo reveal the identity at all? I'm sorry? Did the photo reveal the identity of the official? I believe it did. I'm not entirely sure, but I believe he mentioned the trustee by name when he sent that. One comment on the Tort Amenity Act amenity for provision of information. Negligent misrepresentation is a separate issue from provision of information. The plaintiff cited the Doe case below. I forget if they cited it here, but I don't think they did. The Doe case involved the negligent misrepresentation, but provision of information is a separate amenity within that section. So the negligent in that section does not apply to provision of information. Provision of information is an absolute amenity. It doesn't even have a willful and wanton restriction like law enforcement amenity does. So if there are no more questions, I'm happy to rest on the briefing. Well, there is a case that discusses Cursaba. I don't know if you're familiar with it, but Justice Tice wrote Misner v. Clifford on the first appellate 09. I've not seen that one, I apologize. Well, it was a litigation privilege. And the opinion specifically says, with respect to fair report, that some States broaden the privilege for report of It's kind of an application of a self-conferral rule. Some States have broadened it to allow attorneys, because that was the context of that case, to talk about allegations in a complaint that they filed. And some States have allowed that to remain privileged, although it would otherwise be self-conferred. And the restatement mentions that. And Justice Tice says, in Celaya, they squarely accepted Section 611 of the restatement without reservation. So we're not going to consider any broadening of a privilege for lawyers. I don't know if that's a bit too much to bite off. But you've already asked, well, you should broaden it for official acts by, you know, public body. And you said, you know, Kurzabe doesn't say you can't do it. But here we've got a case following where Justice Tice said the Supreme Court didn't adopt anything broader than 611 in the restatement. So why should we do it here? She refused a similar invitation, or I should say writing for the panel on the First District. Justice Tice refused that invitation. I think the issue of attorneys talking about things that they're doing for their clients in court is different than the issue of public officials talking about what they've done for the public in public. And I'm not new with that case. I apologize. I have not read it. So I guess I can't provide any more of an answer than that. Thank you. Have you read Paul's record? I'm sorry? Have you read Paul's record? It doesn't ring a bell. I apologize. Transfer of intent. Oh. It's the duty to be foreseen is the responsibility to be obeyed or something like that. It's the old tort case regarding firecrackers causing the dislodging of a vending machine causing damage on a tram or a station. It's a classic case, and we're talking about a classic tort here. I figured if you hadn't read that, you might not have read Paul's record. If I had, it's been many years. But I would just comment that the knowledge here is an element of the claim, whereas there it's negligence, and we're talking in that situation about what the consequence of the negligence was. Thank you. Thank you. Mr. Berry, are you ready to proceed? Thank you, Your Honor. It's been years since I read Paul's graph, and I'm sure my forgettery exceeds my memory about it. It's about the only case that I recall up from torts 101. Right. Just a couple of points I want to raise. One is the reason context is important, and we spent two pages of it in our reply brief on the Bryson case and how Bryson analyzes context of statements, and I would refer the Court to those two pages, 11 and 12. I believe that anyone can take one word out of context and say, well, intimidating is not an allegation of crime or harassment isn't. But in the context of this, where there's an assertion, where there's a communication to his employer six months after he's left the board on an issue that the State's attorneys have already declined, and he sends that information and those allegations to the employer in that context with a cover letter that says you have a problem and is this the way you want to be represented, that the context of those is not an innocent interpretation of the words, and the case law doesn't support a suggestion that that's true. On the self-conferring issue, paragraph 48 of the complaint, Mr. Berman was the cabal leader at the town to go after Mr. Young, and it's alleged in that paragraph specifically that he was the one leading the crowd to stop Mr. Young from investigating the town. So I would suggest that the argument that the village wrote the letter was a village action. It was an action led by Mr. Berman on behalf of the village. The letter to the State's attorneys was. But the communication by the dossiers anonymously was by Mr. Berman personally six months after Mr. Young was off the board, and for no purpose, there was no purpose advanced on behalf of the village in making those communications at all. It was said for one reason and one reason only, to continue what they couldn't accomplish at the State's attorney's office by going after his employer. And counsel even admitted that it was sent there for his employer to put pressure. Well, if the employer's going to put pressure on him for that conduct, then the suggestion is that that conduct was of such a nature that was alleged in the dossiers that his employer was going to look unfavorably on it. And much like Pawsgraph, they had no idea what they let loose by making those allegations. So I would suggest that the self-conferral was exactly and precisely what happened here. With that, I'll rely on the briefs. Mr. Earnick, questions? Going back to what I asked during your original argument, if there needs to be context, doesn't there need to be per quote allegations as opposed to per se? Because per se means basically it's open, notorious, it's patent, it's obvious that it's defamatory. And if you have to put it in context and you have to explain it, doesn't that mean it's per quote? Well, first, we believe it is per se, first of all. And Bryson says you determine whether it's per se in context. Wait, wait, wait. You said you can determine whether it's per se in context. My apologies. My argument about the context had to do with the suggestion that there is a fair – it's an innocent construction versus – the argument was raised by Mr. Berman that there is an innocent construction to the words that were used. And we're suggesting that in context there is no innocent. In fact, they make two arguments. One is it's true, and two is it's innocent. Both can't be true. But – and frankly, the fact that they're asserting that it's true reveals that it isn't innocent. But our position is that context doesn't change the – doesn't diminish the defamation per se claim. Because the requirements under defamation per se are merely assertions of criminal conduct, and that was done here. And also – Then what does context have to do with it? Because you were talking about there were context – or there was a context here that induced the error that the trial court committed. So I'm trying to find out what it was that the – what was the context that would require us to overrule or to reverse the trial court's finding or findings? The letter the state's attorneys included in two dossiers sent anonymously to Mr. Young's employer where there were allegations that he engaged in criminal conduct. That context. The statements themselves are defamatory. It's the context of them being sent in an anonymous dossier to his employer six months after he's off the board, admittedly to pressure his employer to get on his back. Maybe fire him. What I was seeking was context to your context. Excuse me. Because somewhere in your argument it seemed like you were saying that you look at the context of the word and not the context of the words. And to me context of the word is a misnomer. The context of a word is a word that has multiple meanings depending on what the sentence structure is that it is contained in. And the context of the communication. Yes. It's the old story. Johnny, will you please spell the word? Or pardon me. Yes. Spell the word that I'm going to give you in a sentence. And the sentence was something like, they're going to park their car over there. So what's the word you're going to spell? There. All three? So the point is is that context is important, but the thing is is that the term context is rather foreign to defamation per se. The statements made were defamatory. And in the context of how they were communicated to you. And that's the noble review? Yes, it is. Okay. I have no further questions. Any other questions? No. Thank you. Thank you. We've covered all the cases on the call. The court is adjourned.